# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

**GREATGIGZ SOLUTIONS, LLC,**

Plaintiff

v.

**FREELANCER LIMITED,**

Defendant

**Case No. 6:20-cv-00738**

**JURY TRIAL DEMANDED**

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

GreatGigz Solutions, LLC ("Plaintiff") hereby files this Original Complaint for Patent Infringement against Freelancer Limited ("Freelancer" or "Defendant"), and alleges, on information and belief, as follows:

## THE PARTIES

1.    GreatGigz Solutions, LLC is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business at 600 S. Dixie Hwy, Suite 605, West Palm Beach, Florida 33401.

2.    On information and belief, Freelancer Limited is an entity formed and operating under the laws of Australia, with a principal place of business located at Level 37, Grosvenor Place, 225 George Street, Sydney, NSW 2000, Australia ACN 141 959 042.  On information and belief, Freelancer is publicly traded on the Australian Security Exchange under the ticker ASX:FLN.  On information and belief, Freelancer maintains corporate offices at locations worldwide, including Vancouver, Canada, but has no primary place of business in the United States.  On information

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

and belief, Freelancer is not registered to conduct business in the State of Texas, and has no registered agent for service in the State of Texas.

3.      On information and belief, Freelancer operates the web domain at www.freelancer.com, which is readily available to residents of this District, and is used extensively by residents of the State of Texas and of this District.  By way of example, a current contest running on freelancer.com is for a cleaning company based in San Antonio, Texas:



4.      On information and belief, Freelancer sells and offers to sell products and services throughout the State of Texas, including in this judicial District, and introduces services via its infringing systems into the stream of commerce knowing and intending that they would be extensively used

in the State of Texas and in this judicial District.  On information and belief, Freelancer specifically targets customers in the State of Texas and in this judicial District.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338.

6.  This Court has personal jurisdiction over Defendant.  Defendant has continuous and systematic business contacts with the State of Texas.  Defendant directly conducts business extensively throughout the State of Texas, by distributing, making, using, offering for sale, selling, and advertising (including the provision of interactive web pages and mobile applications) its services in the State of Texas and in this District.  Defendant has purposefully and voluntarily made its infringing systems available to residents of this District and into the stream of commerce with the intention and expectation that they will be purchased and used by consumers in this District.  On information and belief, Freelancer currently connects over 46 Million employers and freelancers globally from over 247 countries, regions, and territories.  On information and belief, in 2019 Freelancer reported net revenues of $58 Million on a gross volume of $788 Million.

7.  Venue is proper in the Western District of Texas as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(3) and 1400(b).

## PATENTS-IN-SUIT

8.  GreatGigz Solutions, LLC is the owner, by assignment, of U.S. Patent Nos. 6.662,194 ("the '194 Patent"); 7,490,086 ("the '086 Patent"); 9,760,864 ("the '864 Patent"); and 10,096,000 ("the '000 Patent") (hereinafter collectively referred to as "the GGS Patents").

9.  The GGS Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

10.     The inventions described and claimed in the GGS Patents were invented by Raymond Anthony Joao.

11.     The GGS Patents each include numerous claims defining distinct inventions.

12.     The priority date of each of the GGS Patents is at least as early as July 31, 1999.  As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

13.     For example, and as evidence of the stated non-routine aspects of the inventions, during prosecution of the '864 Patent, the patent examiner considered whether the claims of the '864 Patent were eligible under 35 USC §101 in view of the United States Supreme Court's decision in *Alice*.  The patent examiner affirmatively and expressly found that the claims are in fact patent eligible under 35 USC §101 because all pending claims are directed to patent-eligible subject matter, because none of the pending claims are directed to an abstract idea, and because there would be no preemption of the abstract idea or the field of the abstract idea.

14.     GreatGigz Solutions, LLC alleges infringement on the part of Defendant of the '194 Patent and the '086 Patent (collectively as the "Asserted Patents").

15.     The '194 Patent relates generally to an apparatus and method for providing recruitment information, including a memory device for Storing information regarding at least one of a job opening, a position, an assignment, a contract, and a project, and information regarding a job Search request, a processing device for processing information regarding the job Search request upon a detection of an occurrence of a Searching event, wherein the processing device utilizes information regarding the at least one of a job opening, a position, an assignment, a contract, and a project, Stored in the memory device, and further wherein the processing device generates a message containing information regarding at least one of a job opening, a position, an

assignment, a contract, and a project, wherein the message is responsive to the job Search request, and a transmitter for transmitting the message to a communication device associated with an individual in real-time.  *See* Abstract, '194 Patent.

16.     The '086 Patent relates generally to an apparatus, including a memory device which stores information regarding a job opening, position, assignment, contract, or project, and information regarding a job search request or inquiry, a processing device which processing the information regarding a job search request or inquiry upon an automatic detection of an occurrence of a searching event which is an occurrence of a job posting, a posting of new or revised data or information, a news release of a business event, an employment-related event, an economic report, industry-specific news, an event which creates an to fill a position, or an event which creates an interest to seek a position, and generates a message, containing the information regarding a job opening, position, assignment, contract, or project, responsive to the job search request or inquiry, and a transmitter which transmits the message to a communication device associated with an individual.  *See* Abstract, '086 Patent.

17.     As noted, the claims of the Asserted Patents claim priority to at least July 31, 1999.

18.     The claims of the Asserted Patents are not drawn to laws of nature, natural phenomena, or abstract ideas.  Although the systems and methods claimed in the Asserted Patents are ubiquitous now (and, as a result, are widely infringed), the specific combinations of elements, as recited in the claims, was not conventional or routine at the time of the invention.

19.     Further, the claims of the Asserted Patents contain inventive concepts which transform the underlying non-abstract aspects of the claims into patent-eligible subject matter.

20.     Consequently, the claims of the Asserted Patents recite systems and methods resulting in improved functionality of the claimed systems and represent technological improvements to the operation of computers.

21.     The claims of the Asserted Patents overcome deficiencies existing in the art as of the date of invention, and comprise non-conventional approaches that transform the inventions as claimed into substantially more than mere abstract ideas.  For example, as of the date of invention, "[j]ob searching activities and recruitment activities typically require efforts in introducing parties to one another, pre-screening the parties prior to, and/or subsequent to, an introduction, acting as an information gathering entity for a party, exchanging information in order to determine if a relationship is appropriate and/or desirable, negotiating a deal, and/or consummating a deal between the respective parties.  While individuals and/or employers and/or hiring entities can act on their own behalf during most of the process, one of the parties may typically enlist the efforts of an employment agency or agencies, a recruiter(s), a so-called 'headhunter(s)', an employment and/or career consultant(s), a temporary employment agency or agencies, a personal agent(s), a personal manager(s), and/or another intermediary or intermediaries, sometimes at great expense." '194 Patent at 1:59-2:6.  The inventions as claimed overcome these deficiencies in the state of the art, and provide substantial cost savings to all parties.  As explained, as of the date of invention, "[t]he enlistment of employment agencies, recruiters, so-called 'headhunters', employment and/or career consultants, temporary employment agencies, personal agents, personal managers, and/or other intermediaries, can be costly and can lead to job search efforts and/or recruitment efforts which may be limited in breadth and/or scope by the personal and/or individual contacts, limitations and/or constraints associated with the employment agency, recruiter, so-called 'headhunter', employment and/or career consultant, temporary employment

agency, personal agent, personal manager, and/or other intermediary." *Id.* at 2:7-17.  As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the need for a costly middle-man in the process is overcome.  *Id.* at 2:18-24; 6:45-55.

22.     The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by removing barriers confronting many at the time.  As explained, as of the date of invention, "[j]ob searching efforts and recruitment efforts may be limited by and/or be constrained by limited personal contacts, geographical constraints, monetary constraints, and/or time constraints.  Oftentimes, individuals, employers and/or hiring entities, do not have the resources to conduct their own respective job searching efforts or recruitment efforts.  The enlistment of employment agencies, recruiters, so-called 'headhunters', employment and/or career consultants, temporary employment agencies, personal agents, personal managers, and/or other intermediaries, may not be sufficient to overcome these limitations and/or constraints, particularly, if the respective employment agency or agencies, recruiter(s), so-called 'headhunter(s)', employment and/or career consultant(s), temporary employment agency or agencies, personal agent(s), personal manager(s) and/or other intermediary or intermediaries, are working with similar limitations and/or constraints." *Id.* at 2:26-42.  As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the need for extensive personal contacts and geographical proximity are overcome.

23.     The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by removing barriers confronting many at the time.  As explained, as of the date of invention, "[t]he job search process and/or the recruitment process can typically be rendered more difficult in instances when additional information may be requested by one or by both of

the parties concerning a counterpart.  This typically results in time delays and/or additional expense to the party having to comply with such a request." *Id.* at 2:43-48.  As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the need for time-consuming delays is overcome.

24.    The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by removing barriers confronting many at the time.  As explained, as of the date of invention, "[j]ob searching efforts and/or recruitment efforts may further be rendered more difficult when the parties are not properly pre-screened, thereby resulting in wasted time and effort, and/or when the parties are not properly informed as to the needs and/or demands of a counterpart.  The needs and/or demands can include job description, job needs, project description, assignment description, salary, compensation, and/or other related information.  The failure to pre-screen the parties and/or to conduct a dialog and/or initiate interviews and/or discussions when the parties may be so far apart regarding their respective needs, requests and/or expectations, for example, those involving job duties and/or salary, can result in wasted time and effort." *Id.* at 2:49-61.  As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the associated time and effort are reduced, resulting in more efficient processes and cost savings for all involved.

25.    The inventions as claimed further overcome the deficiencies existing in the art as of the date of invention by removing barriers confronting many at the time.  As explained, as of the date of invention, "[c]onfidentiality is typically another concern in job searching activities and/or in recruitment activities.  Individuals, employees, and/or hiring entities may have an interest in, and/or a desire for, maintaining confidentiality during at least some initial stages of any job search and/or recruitment effort.  In some instances, once an initial interest is expressed, any

confidentiality which may have existed may be lost for the remainder of the process. Sometimes, it may be desirable for an individual, an employer and/or hiring entity, to retain at least some level of confidentiality and/or anonymity further into the job search and/or recruitment process.   In this manner, at least some confidentiality and/or anonymity can be preserved, especially if a deal between the parties is not ultimately reached." *Id.* at 2:62-3:8.  As such, the inventions as claimed provide non-conventional solutions to the conventional problems of the day because the need for confidentiality in the process is enhanced.  *See id.* at 6:59-65.

26.     As noted above, during prosecution of the '864 Patent, the patent examiner considered whether the claims of the '864 Patent were eligible under 35 USC §101 in view of the United States Supreme Court's decision in *Alice*.  The patent examiner expressly found that the claims are in fact patent eligible under 35 USC §101 because all pending claims are directed to patent-eligible subject matter, none of the pending claims are directed to an abstract idea, and there would be no preemption of the abstract idea or the field of the abstract idea.  For these same reasons, all of the claims of the Asserted Patents are patent-eligible.

27.     The '194 Patent was examined by Primary United States Patent Examiner Franz Colby.  During the examination of the '194 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 705/1, 10, 11, 705/26, 707/104.1, 10, 3, and 103R.

28.     After conducting a search for prior art during the examination of the '194 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 5,164,897, 11/1992, Clark et al.; (ii)  5,832,497, 11/1998, Taylor; (iii) 5,884.270, 3/1999, Walker et al.; (iv) 5,884.272, 3/1999, Walker et al.; (v) 5,978,768, 11/1999, McGovern et al.; (vi) 6,324,538, 11/2001, Wesinger, Jr. et al.; (vii) 6,332,125, 12/2001,

Callen et al.; (viii) 6,363,376, 3/2002, Wiens et al.; (ix) 6,370,510, 4/2002, McGovern et al.; (x) 6,381,592, 4/2002, Reuning; and (xi) 6,385,620, 5/2002, Kurzius et al.

29.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '194 Patent to issue.  In so doing, it is presumed that Examiner Colby used his or her knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Colby has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

30.     The '194 Patent is a pioneering patent, and has been cited as relevant prior art in over 250 subsequent United States Patent Applications, including Applications Assigned to such technology leaders as Ricoh, Robert Half International, IBM, Yahoo!, Oracle, Amazon, Monster, and CareerBuilder.

31.     The '086 Patent was examined by Primary United States Patent Examiner Jean M. Corrielus. During the examination of the '086 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 707/104.1, 707/3, 10, 103R, 1, 2, 4, 5, 705/1, 10, 11, and 705/26.

32.     After conducting a search for prior art during the examination of the '086 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: (i) 4,625,081, 11/1986, Lotito et al.; (ii) 5,164,897, 11/1992, Clark et al.; (iii) 5,978,768, 11/1999, McGovern et al.; (iv) 6,370,510, 4/2002, McGovern et al.; (v) 6,381,592, 4/2002, Reuning; (vi) 6,385,620, 5/2002, Kurzius et al.; (vii) 6,567,784, 5/2003,

Bukow; (viii) 6,662,194, 12/2003, Joao; (ix) 6,873,964, 3/2005, Williams et al.; (x) 7,148,991, 12/2006, Suzuki et al.; and (xi) 2003/020531, 6/2003, Parker.

33.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '086 Patent to issue.  In so doing, it is presumed that Examiner Corrielus used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Corrielus has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

34.     The '086 Patent is a pioneering patent, and has been cited as relevant prior art in over 250 subsequent United States Patent Applications, including Applications Assigned to such technology leaders as Xerox, Yahoo!, EDS, Microsoft, CareerBuilder, Monster, LinkedIn, and IBM.

35.     The claims of the Asserted Patents were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration.

## THE ACCUSED INSTRUMENTALITIES

36.     On information and belief, Defendant makes, sells, advertises, offers for sale, uses, or otherwise provides the Freelancer website and its ancillary sites, including its various Mobile Applications, in the United States.  The Freelancer apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing job search and/or recruitment services to individuals (including job seekers, contractors, and employers) in the United States.  The Freelancer system comprises an apparatus with multiple interconnected

infrastructures that infringe the Asserted Patents.  The public-facing aspect of the Freelancer apparatus is the Freelancer website, which is available at www.freelancer.com, together with the associated Freelancer Mobile Applications for Consumers and Contractors, respectively. Collectively, all of the foregoing comprises the "Accused Instrumentalities."

## COUNT I
### Infringement of U.S. Patent No. 6,662,194

37.    Plaintiff incorporates the above paragraphs by reference.

38.    Defendant has been on actual notice of the '194 Patent at least as early as the date it received service of this Original Complaint.

39.    On information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

40.    On information and belief, Defendant has directly infringed and continues to directly infringe at least Claim 1 of the '194 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

*41.*    The Accused Instrumentalities comprise an apparatus for providing recruitment information. The infringing apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing recruitment information and services to individuals (including individuals, independent contractors, temporary workers, and/or freelancers) in the United States.  On information and belief, the Accused Instrumentalities comprise an apparatus with multiple interconnected infrastructures, including but not limited to multiple data centers, including Amazon Web Services ("AWS") data centers located across the United States.



*See* https://check-host.net/ip-info?host=freelancer.com, as accessed August 13, 2020.

42.     On information and belief, the Freelancer Accused Instrumentalities comprises data centers housing servers, memory devices, processing devices, receivers, and transmitters.

43.     The Freelancer Accused Instrumentalities comprise a memory device, which stores information regarding at least job openings, positions, assignments, contracts, and/or projects.   Such information is collected from users whenever they use the Freelancer apparatus to seek out a contractor or service provider (a "freelancer").   On information and belief, Freelancer refers to such queries collectively as "Project Posting."



*See* https://www.freelancer.com/info/how-it-works/, as accessed August 13, 2020.

44.     Individual users of the Freelancer apparatus submit a Post relating to projects for which they are seeking qualified applicants (contractors and/or service providers), and the Freelancer apparatus uses the input to notify relevant contractors.   The contractors have the option of expressing interest in accepting the open employment position or opportunity by preparing a bid for the user to consider.

45.     The Freelancer memory device further stores information regarding contractors' individual search requests, which comprise profiles and business contact preferences for contractors and other service providers who make use of the Freelancer apparatus.   On information and belief, the search request submitted by each contractor or service provider comprises such information as contact information, location, and service category.   By signing up with Freelancer as a contractor or service provider, the contractor or service provider submits a search request for leads to be generated that are pertinent to the contractor's specific skillset.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                        14



*See* https://www.freelancer.com/info/how-it-works/, as accessed August 13, 2020.

46.     The Freelancer Accused Instrumentalities comprise a processor for processing the aforementioned information upon the occurrence of a searching event, which occurs, for example, when the individual user of the Freelancer apparatus Posts a Project.

47.     As noted, the Freelancer apparatus comprises a transmitter, which causes messages concerning the Posted Project to be delivered to the relevant contractors and/or service providers in real-time.

> ❷ **Browse jobs that suit your skills, expertise, price, and schedule**
>
> We have jobs available for all skills. Maximize your job opportunities by optimizing your filters. Save your search and get alerted when relevant jobs are available.

*See* https://www.freelancer.com/info/how-it-works/, as accessed August 13, 2020.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    15

48.     Once the user receives the proposals from the contractors/service providers through Freelancer, the user is able to retain the services of the contractor/service provider, and then perform a review of the contractor/service provider on the Freelancer portal.  Such reviews are maintained by Freelancer, and are used to rate or grade the contractor/service provider.  Users are also able to read the reviews for each contractor/service provider.  For example:





49.     On information and belief, Freelancer also performs independent checks on contractors/service providers, and maintains such information.   On information and belief, contractors/service providers who have successful and/or positive checks are tagged by Freelancer as "Verified by Freelancer Staff" and/or "Preferred Freelancer."



50.     The foregoing infringement on the part of Defendant has caused injury to Plaintiff.  The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '194 Patent.

51.     To the extent Defendant continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '194 Patent, such infringement is necessarily willful and deliberate.  Plaintiff believes and contends that Defendant's continuance of its clear and inexcusable infringement of the '194 Patent post-notice is willful, wanton, malicious, bad-faith, deliberate, and/or consciously wrongful.

52.     Including because of the foregoing, Plaintiff contends such activities by Defendant qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced

damages.   Including based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

53.   Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

**COUNT II**
**Infringement of U.S. Patent No. 7,490,086**

54.   Plaintiff incorporates the above paragraphs by reference.

55.   Defendant has been on actual notice of the '086 Patent at least as early as the date it received service of this Original Complaint.

56.   On information and belief, Defendant owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

57.   On information and belief, Defendant has directly infringed and continues to directly infringe at least Claim 18 of the '086 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

58.   The Accused Instrumentalities comprise an apparatus for providing recruitment information. The infringing apparatus comprises servers, hardware, software, and a collection of related and/or linked web pages and mobile applications for providing recruitment information and services to individuals (including individuals, independent contractors, temporary workers, and/or freelancers) in the United States.   On information and belief, the Accused Instrumentalities comprise an apparatus with multiple interconnected infrastructures, including but not limited to multiple data centers, hosted by its partner Amazon Web Services.  *See* above.

59.   On information and belief, the Freelancer Accused Instrumentalities comprises data centers housing servers, memory devices, processing devices, receivers, and transmitters.

60.     The Freelancer Accused Instrumentalities comprise a memory device, which stores information regarding at individuals available for applying for a job opportunity or hiring need.   On information and belief, the Freelancer memory device stores information concerning contractors and service providers who are available and willing to accept assignments within the Freelancer network.   Each such contractor/service provider, on information and belief, is employed by the Freelancer end-user as an Independent Contractor to perform specific, defined tasks for the benefit of the end-user.   *See* above.

61.     The Freelancer Accused Instrumentalities comprise a processing device which automatically detects searching events, which occur when a user of the Freelancer apparatus completes a Project Posting.   Each such Project Posting comprises a job posting for Freelancer contractors/service providers, and otherwise comprises an event which creates an interest in an individual (the contractor/service provider) to seek and accept the position.   *See* above.

62.     The Freelancer Accused Instrumentalities comprise a processing device which generates a message containing information regarding the contractors/service providers to the user in response to the Service Request.     Such message includes, *inter alia*, the name and contact information for the relevant contractors/service providers, in the form of the Freelancer Profile, as well as bid information.

63.     The foregoing infringement on the part of Defendant has caused injury to Plaintiff.   The amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '086 Patent.

64.     To the extent Defendant continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '086 Patent, such infringement is necessarily willful and

deliberate.   Plaintiff believes and contends that Defendant's continuance of its clear and inexcusable infringement of the '086 Patent post-notice is willful, wanton, malicious, bad-faith, deliberate, and/or consciously wrongful.

65.   Including because of the foregoing, Plaintiff contends such activities by Defendant qualify this as an egregious case of misconduct beyond typical infringement, entitling Plaintiff to enhanced damages.   Including based on the foregoing, Plaintiff requests an award enhanced damages, including treble damages, pursuant to 35 U.S.C. § 284.

66.   Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, GreatGigz Solutions, LLC respectfully requests the Court enter judgment against Defendant as follows:

1.   Declaring that Defendant has infringed each of the Asserted Patents;

2.   Awarding GreatGigz Solutions, LLC its damages suffered because of Defendant's infringement of the Asserted Patents;

3.   Awarding GreatGigz Solutions, LLC its costs, attorneys' fees, expenses, and interest;

4.   Awarding GreatGigz Solutions, LLC ongoing post-trial royalties; and

5.   Granting GreatGigz Solutions, LLC such further relief as the Court finds appropriate.

**<u>JURY DEMAND</u>**

GreatGigz Solutions, LLC demands trial by jury, under Fed. R. Civ. P. 38.

//

Dated:  August 14, 2020                     Respectfully Submitted


                                            */s/ Thomas Fasone III*
                                            Thomas Fasone III
                                            Texas Bar No. 00785382
                                            tfasone@ghiplaw.com
                                            M. Scott Fuller
                                            Texas Bar No. 24036607
                                            sfuller@ghiplaw.com
                                            Rene Vazquez
                                            rvazquez@ghiplaw.com
                                            Pro Hac Vice Anticipated

                                            **GARTEISER HONEA, PLLC**
                                            119 W. Ferguson Street
                                            Tyler, Texas 75702
                                            Telephone: (903) 705-7420
                                            Facsimile: (888) 908-4400


                                            Raymond W. Mort, III
                                            Texas State Bar No. 00791308
                                            raymort@austinlaw.com
                                            **THE MORT LAW FIRM, PLLC**
                                            100 Congress Ave, Suite 2000
                                            Austin, Texas 78701
                                            Tel/Fax: (512) 865-7950

                                            **ATTORNEYS FOR**
                                            **GREATGIGZ SOLUTIONS, LLC**